## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF KANSAS
## AT KANSAS CITY

| | |
|---|---|
| MELVIN WILSON              ) | |
|                   ) | |
|         **Plaintiff,**   ) | |
|                   ) | |
| v.                 ) | **JURY TRIAL DEMANDED** |
|                   ) | |
| **LANDERS MCLARTY OLATHE**  ) | |
| **KS, LLC**             ) | |
| **d/b/a OLATHE DODGE CHRYSLER** ) | |
| **JEEP RAM**          ) | |
| **SERVE:**           ) | |
| **The Corporation Company, Inc.**  ) | |
| **112 SW 7th Street**     ) | |
| **Suite 3C**          ) | |
| **Topeka, Kansas 66603**   ) | |
|                   ) | |
|         **Defendant.**  ) | |

## PLAINTIFF'S CLASS ACTION COMPLAINT

COMES NOW Plaintiff, on behalf of himself and all persons similarly situated, by and through his counsel A. Scott Waddell of the Waddell Law Firm LLC and Paul ("Pablo") Mose of Mose Law, LLC, and states and alleges as follows:

### PARTIES

1.    Plaintiff Melvin Wilson ("Wilson") is an individual consumer and resident of Wyandotte County, Kansas.

2.    Defendant Landers McLarty Olathe KS, LLC d/b/a Olathe Dodge Chrysler Jeep Ram ("Landers") is an Arkansas Limited Liability Company which owns and/or operates an automobile dealership located at 15500 West 117th Street, Olathe, Kansas

66062.   Landers can be served by serving its Registered Agent, The Corporation Company, Inc., at 112 SW 7th Street, Suite 3C, Topeka, Kansas 66603.

3.     Plaintiff is currently unaware of the identities of all of the members of Defendant Landers or their domicile, as Arkansas made such information confidential in 2007.

4.     Review of Landers' filings with the Kansas Secretary of State only reveals the identity of one of Landers' members: RLJ McLarty Landers Automotive Holdings, which, upon information and belief, is domiciled in Arkansas.

5.     However, upon information and belief, none of Landers' other members—if there are any—are domiciled in Kansas.

6.     Plaintiff intends to amend this Complaint to name any marketing and/or advertising agency utilized by Defendant as soon as practicable, but discovery is required to identify all liable parties.

**JURISDICTION AND VENUE**

7.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a)(1) and 1367.   Further, Plaintiff seeks damages for the class in excess of $75,000.00.

8.     This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391.

**FACTS COMMON TO ALL COUNTS**

9.     In the Summer of 2017, Wilson received a mailer entitled "Scratch, Match & Win!" from Defendant (hereafter "the Scam").

10.     The Scam was for "THE WIN BIG SAVINGS EVENT".

11.     The Scam was for July 13 to 22, 2017.

12.     The Scam was from "Olathe Dodge" and was sent to the "Current Resident" at 15903 W. 127th Street, Apartment 323, Olathe, Kansas 66062-5110. Plaintiff resided at this aforementioned address upon receipt of the Scam.

13.     The Scam identified a phone number of 866-378-2253.

14.     The Scam was full of fake and false promises and written representations, including, but not limited to:

    a.     "IF YOU HAVE 3 LIKE SYMBOLS, YOU WIN!!!!"

    b.     "IF YOUR KEY UNLOCKS THE VEHICLE OR YOUR CONFIRMATION NUMBER MATCHES, IT'S YOURS!"[1]

    c.     "IF YOUR NUMBER MATCHES THE NUMBER ON THE INSIDE PAGE, YOU WIN A VEGAS VACATION CERTIFICATE!†"[2]

    d.     "RECEIVE A RESTAURANT CERTIFICATE JUST FOR COMING IN!††"[3]

    e.     The Scam identified that the odds of winning a MP3 Player valued at $39.00 to be 1:1.

---

[1]  The fake key features a warning that states:
 "! WARNING
DO NOT REMOVE!
Bring this entire mailer with you to Olathe Dodge!
!WARNING
BRING YOUR KEY IN NOW"
[2]  "Value $199-$636, good for 4 night hotel stay for two adults and two children.  Taxes and a $16.95 processing fee not included.  See dealer for list of destinations.  See dealer for details."
[3]  "$300 value.  Taxes and $29.99 processing fee not included.  See dealer for details."

f.    The Scam promised a "FREE SMART WATCH WITH A TEST DRIVE!†††"[4]

15.    Plaintiff's scratch off winning number was 72194 indicating Plaintiff won "A VEGAS VACATION CERTIFICATE!†"

16.    The Scam states:  "Our goal is 100% Credit Approval", including approval of consumers with "open bankruptcy, foreclosure, repo, tax liens, collections, divorce and judgments".

17.    Plaintiff scratched off three images depicting bags of money within the three scratch offs indicating an alleged winner.

18.    After scratching of the Scam and being advised of being a multiple-prize winner, Plaintiff drove to Olathe Dodge on or about July 18, 2017 with his fiancé to collect his prizes and see if his key attached to the Scam would unlock a new vehicle.

19.    When Plaintiff arrived at the Defendant's lot, Defendant's agent and/or employee named "Tyler" greeted Plaintiff.

20.    Tyler inquired from Plaintiff what brought him to Defendant's lot.

21.    Plaintiff replied, "I received a scratch ticket in the mail and I am here to check to see if the key attached to the scratch ticket will unlock or fit any of the car ignitions as described."

22.    Defendant's Agent, believed to be named "Tyler," brought Plaintiff and his fiancé inside the dealership and asked questions about if they were willing to trade-in a

---

[4] "$300 value.  While supplies last.  See dealer for details."

vehicle and told Plaintiff that he was guaranteed at least a $4,000.00 down payment from Olathe Dodge.

23.    Defendant's Agent, believed to be named "Tyler," inquired if Plaintiff would be willing to put any money down along with the $4,000.00 that Defendant would provide, and Plaintiff advised that he could put an additional $2,000.00 down.

24.    Defendant's Agent, believed to be named "Tyler," asked questions about Plaintiff's job, social security number, and Plaintiff's residence.

25.    Plaintiff provided the requested information.

26.    Defendant's Agent, believed to be named "Tyler," walked off to go talk to his boss and came back about 10 minutes later to ask Plaintiff what kind of vehicle he would be interested in.

27.    Plaintiff replied that he was interested in a family type vehicle, and Tyler left again to go speak with his boss.

28.    Defendant's Agent, believed to be named "Tyler," returned and said that Plaintiff would receive the restaurant gift certificates, an Apple watch, and an MP3 player.

29.    Defendant's Agent, believed to be named "Tyler," then said that Plaintiff would receive "double the prizes since Defendant Landers McClarty did not have the prizes available that day".

30.    About 30-40 minutes later Plaintiff asked Defendant's Agent, believed to be named "Tyler," if Plaintiff and his fiancé could see if the key attached to the Scam would start any vehicle.

31.     Defendant's Agent, believed to be named "Tyler," responded "we really don't check the keys sent out on the scratcher to see if they fit any vehicle".

32.     Plaintiff alleged that such a policy was false advertising.

33.     Defendant's Agent, believed to be named "Tyler," responded "no it's not because it had been approved by the Attorney General."

34.     Plaintiff then inquired if Defendant was checking Plaintiff's credit.

35.     Defendant's Agent, believed to be named "Tyler," responded in the affirmative.

36.     On information and belief Plaintiff never gave consent or approval to Defendant, or Defendant's agent, to check Plaintiff's credit.

37.     Plaintiff was concerned that running his credit would damage his credit score.

38.     After approximately 90 minutes Tyler said that Defendant Landers would have a new shipment of cars coming in "tomorrow" (July 19, 2017), and that Defendant would call Plaintiff back to have him come look at same.

39.     Defendant's Agent, believed to be named "Tyler," inquired when Plaintiff would be available to inspect the new shipment of cars.

40.     Plaintiff said he would not be available until after 5:30 p.m. because of work obligations.

41.     Plaintiff never heard back from Defendant Landers.

42.     To date, Plaintiff never received any of the prizes as repeatedly and falsely represented by Defendant.

43.    A few days later Plaintiff began receiving mail from a multitude of entities stating that Plaintiff's credit had been checked by Defendant Landers.

44.    On information and belief, no Kansan has ever received any MP3 player, smart watch, restaurant certificates, Vegas Vacation Certificate or any prize identified within the Scam.

45.    Plaintiff lost time and gas as a result of the wasted trip to Defendant Landers based upon Defendant's numerous false representations within the Scam.

## CLASS ACTION ALLEGATIONS

46.    The Kansas Consumer Protection Act (hereinafter "KCPA") provides that any "consumer who suffers loss as a result of a violation of this act may bring a class action for the damages caused by an act or practice". K.S.A. § 50-634(d).

47.    Plaintiff proposes that he represents three Classes:

**Class A:**

All persons that received the Scam and did not receive any MP3 player, restaurant certificates and/or any prize identified within the Scam.

**In the alternative to Class A, Class B:**

All persons that received the Scam, test drove a vehicle from July 13th to 22nd, 2017, but did not buy or lease a vehicle from Defendant and did not receive a smart watch.

**In the alternative to Classes A and B, Class C:**

All persons that received a Scam with matching numbers and did not receive a Vegas Vacation Certificate.

7

48.     Plaintiff proposes that the following persons shall be excluded from the Classes: (1) Defendant and its, employees, subsidiaries and affiliates; (2) governmental entities; (3) the judge(s) to whom this case is assigned and any immediate family members thereof; (4) Plaintiff's counsel; (5) all persons who have previously settled these claims against Defendant; (6) all consumers that have ever signed any contract with Defendant, including for the purchase or lease of any vehicle.

49.     <u>Numerosity and Ascertainability.</u> The members of the Proposed Classes are so numerous that individual joinder of all members is impracticable.  Plaintiff is informed and believes that the number of people who would be members of the Proposed Classes number in excess of thousands.  The precise number of class members and their addresses are unknown to Plaintiff; however, this information would be readily available from Defendant's (and/or the marketing and/or advertising agency(s) that Plaintiff intends to amend and add as a party defendant) records.  Further, each of the class definitions is crafted using exclusively objective questions to determine membership, making these classes easily ascertainable.

50.     <u>Commonality and Predominance.</u>  This action involves common questions of law and/or fact that predominate over any questions affecting individual class members.  These common questions include, but are not limited to, the following:

     a.  Whether any consumer ever received any of the prizes guaranteed within the Scam;

     b.  Whether Defendant's representations within the Scam were made knowingly or with reason to know;

8

    c.  Whether Defendant has and/or had a reasonable basis to rely upon in making the representations within the Scam;

    d.  Whether Defendant, in written representation(s) contained with the Scam, employed exaggeration(s), falsehood(s), innuendo(s), and/or ambiguity(ies) as to material fact(s);

    e.  Whether Defendant's use of exaggeration(s), falsehood(s), innuendo(s), and/or ambiguity(ies) as to material fact(s) in oral and/or written representation(s) within the Scam were willful;

    f.  Whether Defendant failed to state a material fact;

    g.  Whether Defendant concealed, suppressed, and/or omitted a material fact;

    h.  Whether Defendant's failure to state a material fact was willful;

    i.  Whether Defendant's concealment, suppression, and/or omission of a material fact was willful;

    j.  Whether Plaintiff and the members of the proposed Class(es) are entitled to damages; and,

    k.  In what amount are Plaintiff and the members of the proposed Class(es) entitled to damages.

51.   <u>Typicality.</u> The named Plaintiff's claims are typical of the claims of the Classes because, among other things, on information and belief, the Scam was identical to each consumer it was sent to.

52.   <u>Adequacy of Representation.</u>  Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Classes he seeks to represent.  Additionally, Plaintiff has retained counsel competent and experienced in complex consumer class action litigation.  Plaintiff intends to prosecute this action vigorously.  The interests of the Classes will be fairly and adequately protected by Plaintiff and their counsel.

53.     This case can properly be maintained as a class action pursuant to K.S.A. § 60-223(b)(3) because the common questions of law and/or fact predominate over the individual questions and because a class action is superior to all other available means for the fair and efficient adjudication of the class.

54.     <u>Superiority</u>. A class action is superior to all other available means for the fair and efficient adjudication of Plaintiff and the Class members' claims.  Because of the relatively modest size of each individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein on an individual basis.  Absent a Class Action, the members of the proposed Classes would not be likely to recover, or would not likely have the chance to recover, damages and/or restitution, such that Defendant would be permitted to retain the proceeds of its unlawful conduct.

## COUNT ONE:
## VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT
### Defendant Landers McLarty Olathe KS, LLC

55.     Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

56.     Plaintiff is a "consumer" under the KCPA, specifically § K.S.A. 50-624(b).

57.     Defendant Landers is a "supplier" under the KCPA, specifically K.S.A. § 50-624(l).

58.     Plaintiffs attempted purchase of a vehicle constituted a "consumer transaction" under the KCPA, specifically K.S.A. § 50-624(c).

59.     Plaintiff has been damaged and is "aggrieved" pursuant to the KCPA as a result of Landers' conduct.

60.     The KCPA should be liberally construed to promote its policies of protecting consumers against suppliers that commit deceptive and unconscionable acts and practices. K.S.A. § 50-623; *Williamson v. Amrani*, 283 Kan. 227, 234 (2007).

61.     Violations of the KCPA may occur before, during, or after the consumer transaction.

62.     Landers' violations of K.S.A. § 50-626, Deceptive Acts and Practices, include, but are not limited to, the following:

> a.     Landers, made several false and/or misleading representations of fact within the Scam, knowingly or with reason to know, in violation of K.S.A. § 50-626(a);

> b.     Landers made willful use, in written representations within the Scam, of an exaggeration, falsehood, innuendo, or ambiguity as to a material fact, in violation of K.S.A. § 50-626(b)(2);

> c.     Landers willfully failed to state a material fact and/or willfully concealed, suppressed, and/or omitted a material fact, in violation of K.S.A. § 50-626(b)(3);

> d.     Landers falsely stated, knowingly or with reason to know, that the consumer transaction involved consumer rights, remedies, and/or obligations, in violation of K.S.A. § 50-626(b)(8);

> e.     Landers offered property without intent to supply reasonable, expectable public demand, in violation of K.S.A. § 50-626(b)(6); and

> f.     Landers has committed deceptive acts and/or practices in violation of K.S.A. § 50-626 which including engaging in a pattern of conduct that, when taken in its totality, is and was deceptive.

63.     "Deceptive acts and practices" are a violation of the KCPA "whether or not any consumer has in fact been misled".  K.S.A. § 50-626(b).

64.     Landers' violations of K.S.A. § 50-627, Unconscionable Acts and Practices, include, but are not limited to, the following:

      a.     The Scam failed to provide consumers a material benefit, in violation of K.S.A. § 50-627(b)(3);

      b.     The supplier made misleading statements of opinion which consumers were likely to rely upon to their detriment; and

      c.     Generally making unconscionable representations and/or misrepresentations and/or engaging in unconscionable conduct as pled above in greater detail, in violation of K.S.A. § 50-627(a).

65.     "An unconscionable act or practice violates" the KCPA "whether it occurs before, during or after the transaction." K.S.A. § 50-627(a).

66.     Plaintiff, on behalf of himself and all persons similarly situated, prays that this Court declare the Scam to be in violation of the KCPA and to enjoin Defendant from engaging in the Scam in the future.

67.     Pursuant to K.S.A. § 50-634(a), "[w]hether a consumer seeks or is entitled to damages or otherwise has an adequate remedy at law or in equity, a consumer aggrieved by an alleged violation of this act may bring an action to:

    (1)  obtain a declaratory judgment that an act or practice violates this act; or

    (2) enjoin or obtain a restraining order against a supplier who has violated, is violating or is likely to violate this act."

WHEREFORE, Plaintiff, on behalf of himself and all persons similarly situated, prays for judgment against Defendant for actual damages in such amount as is allowable by law and to be determined at trial, pre- and post-judgment interest at the greatest rate allowed by statute, for reasonable attorneys' fees and recoverable costs, for declaratory and injunctive relief, and for such other and further relief as may be just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff, on behalf of himself and all similarly situated persons, demand a trial by jury on all issues that are triable to a jury.

Respectfully submitted,

*/s/ A. Scott Waddell*
A. Scott Waddell     KS#20955
Waddell Law Firm LLC
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
T: 816-914-5365
F: 816-817-8500
scott@aswlawfirm.com

*/s/ Paul H. Mose*
Paul ("Pablo") H. Mose    KS# 27532
**Mose Law LLC**
3111 Strong Avenue
Kansas City, KS 66106
Tele:   (913) 432-4484
Fax:   (913) 432-4464
Pablo@moselaw.com

**Attorneys for Plaintiff**

13