# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

MELVIN WILSON,

    **Plaintiff,**

v.

LANDERS MCLARTY OLATHE KS, LLC
d/b/a OLATHE DODGE CHRYSLER JEEP
RAM, et al.,

    **Defendants.**

Case No. 18-2051-JAR-GEB

## MEMORANDUM AND ORDER

Plaintiff Melvin Wilson brings this putative class action against Defendants Landers McLarty Olathe KS, LLC, d/b/a Olathe Dodge Chrysler Jeep Ram ("Olathe Dodge") and Hopkins and Raines, Inc. ("HRI"), relating to advertising mailers Olathe Dodge sent to Plaintiff and other similarly situated consumers. Plaintiff alleges claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"),[1] and Kansas Consumer Protection Act ("KCPA").[2] This matter comes before the Court on Defendants' Motion to Dismiss Plaintiff's First Amended Class Action Complaint and to Strike Plaintiff's Class Action Allegations from the First Amended Class Action Complaint (Doc. 18). Defendant moves to dismiss the RICO claim for failure to state a claim upon which relief may be granted, to strike the class action allegations, and asks the Court to decline to exercise supplemental jurisdiction over the remaining KCPA claim. The motion is fully briefed and the Court is prepared to rule. As described more fully below, Defendants' motion to dismiss the RICO claim for failure to state a claim is granted, their

---

[1] 18 U.S.C. § 1962(c).

[2] K.S.A. §§ 50-626, -627.

motion to dismiss the KCPA claim for lack of supplemental jurisdiction is denied, and their motion to strike the class action allegations is denied.

I.     **Background and Procedural History**

The following facts are taken as true from Plaintiff's First Amended Class Action Complaint ("Amended Complaint"). Defendant Olathe Dodge operates a car dealership in Olathe, Kansas. It is an LLC with one known member: RLJ McLarty Landers Automotive Holdings ("RLJ McLarty"). RLJ McLarty is domiciled in Arkansas. Defendant HRI is an advertising company domiciled in Texas that creates advertisement campaigns for its clients. Plaintiff is domiciled in Kansas. Plaintiff asserts jurisdiction in the First Amended Complaint under "28 U.S.C. §§ 1332(a)(1) and 1367."

On March 12, 2010, Olathe Dodge entered into a Consent Order to pay fines stemming from a KCPA lawsuit filed by the Johnson County, Kansas District Attorney's Office. The Consent Order establishes that Olathe Dodge sent a direct mailer to consumers in violation of the KCPA.[3]

In the summer of 2017, Plaintiff received a direct mailer from Olathe Dodge that was produced by HRI.[4] The mailer was operative from July 13 through July 22, 2017. It was entitled "Scratch, Match & Win!" and advertised "THE BIG WIN SAVINGS EVENT" connected to Olathe Dodge. The mailer offered various ways to save money or win prizes. First, it included a scratch off game representing "IF YOU HAVE 3 LIKE SYMBOLS, YOU WIN!!!!" Second, the

---

[3]The Consent Judgment is not attached to the Complaint, however it is attached to Defendants' motion to dismiss. Doc. 19-1. On a motion to dismiss for failure to state a claim, the Court must not consider matters outside the pleadings unless it first provides the parties with notice, and converts the motion to a motion for summary judgment. Fed. R. Civ. P. 12(d). The Court therefore does not consider this exhibit.

[4]Plaintiff alleges that HRI has produced mailers identical to the one he received from Olathe Dodge. Viewing the facts in the light most favorable to Plaintiff, the Court infers that HRI produced the advertising mailer at issue in 2017.

mailer arrived with a key attached while stating "IF YOUR KEY UNLOCKS THE VEHICLE OR YOUR CONFIRMATION NUMBER MATCHES, IT'S YOURS!" Third, the mailer stated, "IF YOUR NUMBER MATCHES THE NUMBER ON THE INSIDE PAGE, YOU WIN A VEGAS VACATION CERTIFICATE!" Fourth, the mailer stated, "RECEIVE A RESTAURANT CERTIFICATE JUST FOR COMING IN!" Fifth, the mailer included "FREE SMART WATCH WITH A TEST DRIVE!" Finally, it represented that the odds of winning an MP3 player were 1:1. HRI has produced mailers identical to the one described above.

Plaintiff's scratch-off number matched the number inside the packet, leading Plaintiff to believe that he won a vacation certificate to Las Vegas. Plaintiff also played the scratch-off game which revealed three matching symbols, leading him to believe that he had won a prize. Plaintiff drove to Olathe Dodge to claim his prizes. Upon arriving, Plaintiff was greeted by an employee of Olathe Dodge. Plaintiff indicated that he was there to see if the key attached to his mailer fit any vehicle. The Olathe Dodge employee asked Plaintiff for general information, including his social security number and occupation.

At some point thereafter, the employee represented to Plaintiff that he would receive a restaurant certificate, a smart watch, and an MP3 player in accordance with the mailer. However, the employee told Plaintiff that because Olathe Dodge was out of stock on prizes, they would give Plaintiff double the prize amounts at another time. After a while, Plaintiff asked the employee if he could test the key that came with his mailer to see if he would win a vehicle. The employee informed him that Olathe Dodge generally does not check to see if the keys match any vehicle. When Plaintiff told him that such a policy was false advertising, the employee responded that it was not because "it had been approved by the Attorney General."[5]

---

[5]Doc. 14 ¶ 43.

Plaintiff then asked if the dealer was checking his credit, and the employee responded affirmatively. Plaintiff was concerned that his credit score would go down as a result and alleges that he never gave consent for the employee to run his score. The employee eventually told Plaintiff that he would call Plaintiff the following day to look at a new shipment of cars. Plaintiff left Olathe Dodge and never heard back from the dealer or its employee.

A few days later, Plaintiff received an email confirming that his credit had been checked by Olathe Dodge. Plaintiff has not received any of the prizes indicated on the mailer. To the best of Plaintiff's knowledge, no Kansan received the prizes listed on the mailer.

The First Amended Complaint proposes Plaintiff represent three alternative classes:

**Class A**:

All persons that received the Scam and did not receive any MP3 player, restaurant certificates and/or any prize identified within the Scam.

**In the alternative to Class A, Class B**:

All persons that received the Scam, test drove a vehicle from July 13th to 22nd, 2017, but did not buy or lease a vehicle from Defendants and did not receive a smart watch.

**In the alternative to Classes A and B, Class C**:

All persons that received a Scam with matching numbers and did not receive a Vegas Vacation Certificate.[6]

Plaintiff alleges two causes of action: (1) Count One, for deceptive acts and practices and for unconscionable acts and practices, in violation of the KCPA; and (2) Count Two, for violating RICO. He seeks damages in excess of $75,000.

---

[6]Doc. 14 at 9.

4

**II.     Motion to Dismiss RICO Claim for Failure to State a Claim**

   **A.     Standard**

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level" and must include "enough facts to state a claim for relief that is plausible on its face."[7] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[8] The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[9] "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[10] Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[11]

The Supreme Court has explained the analysis as a two-step process. For purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[12] Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[13] Second, the court must

---

[7]*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[8]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

[9]*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[10]*Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[11]*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

[12]*Id.* (citing *Twombly*, 550 U.S. at 555).

[13]*Id.* at 678–79.

determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[14] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[15]

**B.   Discussion**

RICO created a private right of action to vindicate a person's right to avoid injury to business or property caused by a pattern of racketeering activity.[16] To maintain a private cause of action under 18 U.S.C. § 1964(c), a plaintiff must plead and ultimately prove, inter alia, that the defendant violated § 1962.[17] Section 1962(c) "makes it unlawful for a person employed by or associated with an enterprise to conduct the enterprise's affairs through a pattern of racketeering activity."[18] To maintain a private right of action based on a violation of § 1962(c), the plaintiff "'must plausibly allege' that the defendants 'each (1) conducted the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity.'"[19]

Here, Plaintiff alleges that under § 1962(c), Defendants belong to an association-in-fact enterprise that has engaged in a scheme to defraud consumers for purposes of enriching themselves by sending out mailers purporting to guarantee prizes and other consumer prizes on Olathe Dodge's property. As to the pattern element of his RICO claim, Plaintiff alleges as follows:

---

[14]*Id*. at 679.

[15]*Id.* at 678.

[16]*RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2096 (2016) (discussing 18 U.S.C. § 1964(c)).

[17]*Safe Sts. Alliance v. Hickenlooper*, 859 F.3d 865, 882 (10th Cir. 2017).

[18]*RJR Nabisco*, 136 S. Ct. at 2097.

[19]*Safe Sts. Alliance*, 859 F.3d at 882 (quoting *v. Urban Settlement Servs.*, 883 F.3d 1242, 1248 (10th Cir. 2016)).

> 87. Specifically, Defendants engaged in an intentional scheme to defraud consumers, most recently from July 13 to 22, 2017, by creating and executing an advertising campaign with fraudulent and false promises on a mailer for a sale at Defendant Landers (as described in specificity in Paragraphs 19-29 of this Amended Complaint).
>
> 88. Defendants engaged in a series of similar schemes to defraud or deceive consumers from at least March, 2010 (when the Johnson County District Attorney sued Defendant Landers over a deceptive mailer) to July 22, 2017, which establishes a pattern of racketeering activity and mail fraud.[20]

Defendants argue these facts do not plausibly allege the pattern element of Plaintiff's RICO claim.[21] "A pattern of racketeering activity must include commission of at least two predicate acts."[22] The plaintiff "must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity."[23] "Congress intended to take a flexible approach [to establishing a pattern of racketeering], and envisaged that a pattern might be demonstrated by reference to a range of different ordering principles or relationships between predicates, within the expansive bounds set."[24]

Plaintiff alleges a pattern of racketeering activity that consists of mail and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343. Under those statutes, Plaintiff "must plausibly allege the 'existence of a scheme or artifice to defraud or obtain money or property by false pretenses, representations, or promises,' and that [defendants] communicated, or caused communications to

---

[20]Doc. 14 ¶¶ 87–88.

[21]In their initial brief, Defendants also challenged the enterprise element of Plaintiff's RICO claim based on case law was abrogated by *Boyle v. United States*, 556 U.S. 938, 946 (2009). Defendants did not address this argument in their reply memorandum so the Court deems it abandoned.

[22]*Garrett v. Selby, Connor, Maddux & Janer*, 425 F.3d 836, 838 (10th Cir. 2005) (quoting *Deck v. Eng'red Laminates*, 349 F.3d 1253, 1257 (10th Cir. 2003)).

[23]*HJ Inc. v. N.W. Bell Tele. Co.*, 492 U.S. 229, 239 (1989).

[24]*Id.*

7

occur, through the U.S. mail or interstate wires to execute that fraudulent scheme."[25] Because Plaintiff alleges mail and wire fraud as predicate acts of racketeering activity, Plaintiff's RICO allegations must meet a heightened pleading standard under Rule 9(b).[26] "[B]ecause Fed. R. Civ. P. 9(b) requires a plaintiff to plead mail and wire fraud with particularity, the plaintiffs must 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'"[27] "Rule 9(b)'s purpose is 'to afford [a] defendant fair notice' of a plaintiff's claims and the factual grounds supporting those claims."[28]

The first part of RICO's pattern requirement is that the predicate acts must be related. The Supreme Court has held that this element can be defined with reference to Title X of the Dangerous Special Offender Sentencing Act.[29] Under that Act, "pattern" is defined as "criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."[30] There is no "unbending test for relatedness," under this approach.[31]

Defendants argue that Plaintiff has not met Rule 9(b) in alleging that the 2010 mailer sent by Olathe Dodge is related to the 2017 mailer created by HRI and sent by Olathe Dodge. Also, Defendants argue that the mailer giving rise to the 2010 Consent Judgment and the 2017 mailer

---

[25]*George v. Urban Settlement Servs.*, 883 F.3d 1242, 1248 (10th Cir. 2016) (quoting *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006)).

[26]*See id.* at 1254 (holding that Rule 9(b) applied to RICO allegations where the plaintiff alleged mail fraud as a predicate act of racketeering activity); *Tronsgard v. FBL Fin. Grp., Inc.*, 312 F. Supp. 3d 982, 991 (D. Kan. 2018) (same).

[27]*George*, 833 F.3d at 1254 (quoting *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2016)).

[28]*HJ Inc.*, 492 U.S. at 1255 (quoting *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997)).

[29]*Id.* (citing 18 U.S.C. § 3575(e)).

[30]18 U.S.C. § 3575(e).

[31]*United States v. Knight*, 659 F.3d 1285, 1291 (10th Cir. 2011) (discussing *HJ Inc.*, 492 U.S. at 243).

are discrete, isolated, unrelated events. The Court finds that the Amended Complaint fails to allege relatedness as to these two mailers; there is no allegation that the 2010 mailer involved HRI.[32] And there is no allegation about the content of the 2010 mailer that would allow for any comparison between it and the 2017 mailer.

Nonetheless, the pattern requirement does not require two separate-in-time schemes involving mail or wire fraud, as suggested by Defendants.[33] Plaintiff alleges that thousands of consumers received the 2017 mailer. The pattern requirement is satisfied when there are at least two predicate offenses that meet the "continuity plus relationship" standard.[34] Under the mail fraud statute, it is axiomatic that "each separate use of the mails in the execution of a scheme to defraud constitutes a separate offense."[35] Therefore, Plaintiff can meet the pattern element of his RICO claim if he can show relatedness and continuity for at least two of the mailers sent to consumers in 2017. Those 2017 mailers allegedly contain identical content, involve the same participants, and use the same method of commission. The Court finds that Plaintiff has pled a sufficient relationship between the thousands of mailers sent by Defendants in 2017.

While demonstrating the relatedness component of a RICO pattern is not cumbersome, a showing of continuity is more difficult to meet.[36] The Supreme Court has explained:

> "Continuity" is both a closed- and open-ended concept, referring
> either to a closed period of repeated conduct, or to past conduct
> that by its nature projects into the future with a threat of repetition.
> It is, in either case, centrally a temporal concept—and particularly
> so in the RICO context, where what must be continuous, RICO's
> predicate acts or offenses, and the relationship these predicates

---

[32] Plaintiff references a 2011 mailer, but there are no facts in the Amended Complaint about 2011 conduct.

[33] *See* 18 U.S.C. § 1961(5); *HJ Inc.*, 492 U.S. at 238.

[34] *HJ Inc.*, 492 U.S. at 238–39.

[35] *Palmer v. United States*, 229 F.2d 861, 867 (10th Cir. 1955).

[36] *See, e.g.*, *Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010) (citing *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1555 (10th Cir. 1992)).

must bear one to another, are distinct requirements. A party
alleging a RICO violation may demonstrate continuity over a
closed period by proving a series of related predicates extending
over a substantial period of time. Predicate acts extending over a
few weeks or months and threatening no future criminal conduct
do not satisfy this requirement: Congress was concerned in RICO
with long-term criminal conduct. Often a RICO action will be
brought before continuity can be established in this way. In such
cases, liability depends on whether the threat of continuity is
demonstrated.[37]

In response to Defendants' argument that the Amended Complaint lacks factual allegations in support of continuity, Plaintiff states several facts not included in the Amended Complaint about Olathe Dodge's commercial success, and suggests the criminal conduct will likely continue given these facts. Plaintiff also points to the Olathe Dodge employee's statement to Plaintiff when he visited the dealer, that the 2017 mailer had been "approved by the Attorney General."[38]

On a motion to dismiss, the Court may not address facts not included in the operative pleading.[39] Therefore, the Court must disregard Plaintiff's assertions about the scale of Olathe Dodge's business, and its annual revenue. But even if the Court considers the facts about Olathe Dodge's commercial success, Plaintiff fails to explain how they show a threat of continuous conduct. The mail fraud alleged here occurred over a closed period of time between June 13–22, 2017. By any measure, this is not a substantial period of time, and the Supreme Court was clear that such predicate acts without threats of future conduct will not suffice. There are no facts alleged in the Amended Complaint demonstrating a threat of repetition. The Supreme Court has suggested that a Plaintiff may show continuity by demonstrating that the predicate acts "are a

---

[37]*HJ Inc.*, 492 U.S. at 241–42 (citations omitted).

[38]Doc. 14 ¶ 43.

[39]Fed. R. Civ. P. 12(d).

regular way of conducting defendant's ongoing legitimate business . . . or of conducting or participating in an ongoing and legitimate RICO enterprise."[40] But the alleged facts do not show that the mailers, which were sent over several days in June 2017, constitute a "regular" way of conducting Olathe Dodge's business. At best, the alleged facts show that on two occasions seven years apart, Olathe Dodge used advertising mailers to promote its business. This falls short of demonstrating a "regular" way of conducting business.

Moreover, Plaintiff fails to plausibly explain how the Olathe Dodge employee's alleged comment that the Attorney General approved the mailer indicates a specific threat of future criminal conduct.[41] Because Plaintiff fails to allege facts sufficient to state a plausible claim of continuity, his RICO claim must be dismissed.

### III. Motion to Dismiss KCPA Claim for Lack of Jurisdiction

Defendant contends that if the RICO claim is dismissed, only supplemental jurisdiction would remain over the KCPA claim and the Court should decline to exercise such jurisdiction. However, in the Amended Complaint Plaintiff asserts diversity jurisdiction under 28 USC § 1332(a)(1). Diversity jurisdiction requires complete diversity of citizenship between the parties, and an amount in controversy in excess of $75,000.[42] "Complete diversity is lacking when any of the plaintiffs has the same residency as even a single defendant."[43] Here, Plaintiff alleges that he is domiciled in Kansas, HRI is domiciled in Texas, and Olathe Dodge is domiciled in Arkansas. He also alleges the amount in controversy exceeds $75,000. Because Plaintiff asserts

---

[40] *HJ Inc.*, 492 U.S. at 243.

[41] *Id.* at 242 ("Though the number of related predicates involved may be small and they may occur close together in time, the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future, and thus supply the requisite threat of continuity.").

[42] *See, e.g.*, *Dutcher v. Matheson*, 733 F.3d 980, 987 (10th Cir. 2013).

[43] *Id.*

sufficient facts to support diversity jurisdiction over the KCPA claim in this matter, the Court need not exercise supplemental jurisdiction over that claim, and Defendants' jurisdictional challenge is therefore denied.

## IV. Motion to Strike Class Action Allegations

Defendant also moves to strike Plaintiff's class action allegations, arguing that he is unable to satisfy the certification requirements under Rule 23 as a matter of law. The Supreme Court has endorsed a critical examination of class allegations at the pleading stage, stating that "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of absent parties are fairly encompassed within the named plaintiff's claim."[44] Significantly, several courts have stricken class allegations on the pleadings in putative nationwide consumer class action cases where manageability, choice of law, and ascertainability issues would prevent certification.[45]

Although the Court has the authority to strike the class allegations at this time, it is mindful of its obligation to conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met.[46] Although Count V appears to allege a nationwide class claim, it is much narrower than the claims discussed in the cases cited by Defendants. Here, the proposed class is limited to

---

[44] *Gen. Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160 (1982).

[45] *See, e.g., Pilgrim v. Univ. Health Card, LLC*, 660 F.3d 943, 949–50 (6th Cir. 2011) (ruling that district court may strike class allegations prior to discovery when discovery will not "alter the central defect in th[e] class claim. . . . [which was] governed by . . . a largely legal determination, and no proffered or potential factual development offers any hope of altering that conclusion, one that generally will preclude class certification."); *Rikos v. Procter & Gamble, Co.*, No. 1:11–cv–226, 2012 WL 641946, at *4 (S.D. Ohio Feb. 28, 2012) (striking class allegations where a "nationwide class of all Align purchasers is inappropriate because the [California] CLRA and the UCL cannot be constitutionally applied to the claims of class members who neither reside in California nor purchased the product there."); *In re Yasmin & Yaz (Dorspirenone) Mktg.*, 275 F.R.D. 270, 274 (S.D. Ill. 2011) (granting defendants' motion to strike class allegations because "it is evident that individual questions of law and fact predominate, and therefore the case is not manageable as a nationwide or statewide class action."); *Hovsepian v. Apple, Inc.*, No. 08–5788, 2009 WL 5069144, at *6 (N.D. Cal. Dec. 17, 2009) (striking class action allegations where "the class is not ascertainable because it includes members who have not experienced any problems with their iMac display screens.").

[46] *D.G. ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010).

recipients of mailers sent by a dealership located in Kansas, based on a single claim arising under Kansas law. Under these circumstances, the Court finds that the better course is to allow discovery to proceed on class certification and consider these issues in the context of a motion to certify the class.[47] The Court therefore denies Defendants' motion to strike the class allegations.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants Olathe Dodge and HRI's Motion to Dismiss Count 2 of the Complaint and to Strike Class Allegations (Doc. 18) is **granted in part and denied in par**t. The motion to dismiss is **granted** as to Count 2 under RICO and **denied** as to Count 1 under the KCPA. The motion to strike class action allegations is **denied**.

**IT IS SO ORDERED.**

Dated: October 29, 2018

    S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE

---

[47]*See Smith v. Merial Ltd.*, Nos. 10–439, 10–442, 10–1050, 10–1391, 10–6372, 11–6976, 2012 WL 2020361, at *3–7 (D.N. J. June 5, 2012) (requiring additional briefing on conflict of law issues raised in motion to strike class action allegations in putative nationwide consumer class action involving flea and tick prevention products for pets); *Sanft v. Winnebago Indus., Inc.*, 214 F.R.D. 514, 519 (N.D. Iowa 2003) (collecting cases discussing the importance of considering the evidentiary record in determining whether Rule 23 requirements have been met); *In re Bayer Corp. Combination Aspirin Prods. Mkt'g & Sales Pracs. Litig.*, 701 F. Supp. 2d 356, 379 (E.D.N.Y. 2010) ("[P]laintiffs link defendant's actions to the elements of the state law causes of action and sketch the outlines of those causes of action. Cursory, yes, but especially when considered in conjunction with the detailed choice of law analysis to be conducted at class certification, the allegations are sufficient . . . ."); *Khorrami v. Lexmark Int'l, Inc.*, No. 07–1671 DDP, 2007 WL 8031909, at *2 (C.D. Cal. Sept. 13, 2007) (collecting cases finding premature motion to strike class allegations solely on the basis of the allegations in the complaint).